No. 22-2083

IN THE UNITED STATES COURT OF APPEALS
FOR THE SEVENTH CIRCUIT

In re DEIGHAN LAW LLC f/k/a Law Solutions
Chicago LLC, d/b/a Upright Law LLC, and
JAMES E. FORD, Petitioners.

## OPPOSITION TO PETITION FOR WRIT OF MANDAMUS BY NANCY J. GARGULA, UNITED STATES TRUSTEE

RAMONA D. ELLIOTT
Deputy Director and General Counsel
P. MATTHEW SUTKO
Associate General Counsel
BETH A. LEVENE
Trial Attorney

Department of Justice
Executive Office for
  United States Trustees
441 G Street, NW,
Suite 6150
Washington, DC 20530
Tel: (202) 307-1399
E-mail: beth.a.levene@usdoj.gov

NANCY J. GARGULA
United States Trustee for Region 10
JAMIE F. WILEY
Assistant United States Trustee
ELLEN L. TRIEBOLD
MARK D. SKAGGS
Trial Attorneys

Department of Justice
Office of the United States Trustee
401 Main St., Suite 1100
Peoria, IL 61602
Tel: (309) 671-7854, ext. 226
Email: mark.d.skaggs@usdoj.gov

# TABLE OF CONTENTS

TABLE OF CONTENTS.................................................................................i

TABLE OF AUTHORITIES......................................................................ii

INTRODUCTION ........................................................................................1

BACKGROUND...........................................................................................1

I.     Statutory Framework...........................................................................1

II.    Factual Background.............................................................................4

ARGUMENT ................................................................................................6

I.     There Is No Clear and Indisputable Right to a Jury Trial.....................7

       A.     Cases addressing claims under section 526(c)(5) prove that there is
              no clear and indisputable right to a jury trial. ...............................8

       B.     Petitioners' unsupported arguments for a jury right despite
              uniformly contrary cases fail to show a clear and indisputable right. ......11

              1.     Supreme Court precedent requires a jury only for legal claims
                     that involve matters of private right.........................................12

              2.     There is no common law analog to the United States Trustee's
                     claim under section 526(c)(5). ...............................................13

              3.     Section 526(c)(5) is a matter of public rights that Congress
                     intended to be adjudicated without a jury. ...............................17

              4.     Petitioners consented to adjudication by an Article I judge
                     sitting without a jury by entering their appearance in the
                     bankruptcy case below. ...........................................................23

II.    A Writ of Mandamus Is Not Necessary to Avoid Irreparable Harm
       Because Any Jury Right Can Be Fully Vindicated on Appeal Should the
       Petitioners Not Prevail on the Merits..................................................25

III.   The Circumstances of this Case Do Not Support this Court Exercising Its
       Discretion to Grant Mandamus. .........................................................27

CONCLUSION ...........................................................................................29

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Atlas Roofing Co. v. Occupational Safety & Health Rev. Comm'n*,
430 U.S. 442 (1977) ................................................................. 8, 17, 21

*In re Att'y & Debt Relief Agency*,
No. 9:13-mp-007, 2013 WL 6036844 (Bankr. M.D. Fla. Nov. 13,
2013) ................................................................................................ 10

*Matter of Balsimo*,
68 F.3d 185 (7th Cir. 1995) ................................................................ 27

*In re Banks*,
No. 17-10456, 2018 WL 735351 (Bankr. W.D. La. Feb. 6, 2018), *aff'd*
592 B.R. 624 (W.D. La. 2018), *aff'd*, 770 F. App'x 168 (5th Cir. 2019) ..................... 9

*In re Bascus*,
548 B.R. 742 (Bankr. S.D. Tex. 2016) .............................................. 10, 19, 23

*Beacon Theatres, Inc. v. Westover*,
359 U.S. 500 (1959) ......................................................................... 6, 7

*In re Brackens*,
598 B.R. 420 (Bankr. W.D. La. 2019) ............................................... 10

*In re Burnett*,
No. 21-02018, 2022 WL 802586 (Bankr. D.S.C. Mar. 16, 2022) .............. 10

*Caldwell-Baker Co. v. Parsons*,
392 F.3d 886 (7th Cir. 2004) ...................................................... 6, 7, 25, 28

*Casamatta v. Deighan Law, LLC (In re Bilous)*,
Adv. No. 20-6013, Dkt. No. 30 (Bankr. W.D. Mo. Feb. 11, 2021) .............. 28

*Chambers v. NASCO, Inc.*,
501 U.S. 32 (1991) ...................................................................... 15, 24

*Cheney v. U.S. Dist. Court*,
542 U.S. 367 (2004) .......................................................................... 6

*Conn. Bar Assoc. v. United States,*
  620 F.3d 81 (2d Cir. 2010) ................................................................................19

*Conrad, Rubin & Lesser v. Pender,*
  289 U.S. 472 (1933) ................................................................................... 15, 19

*In re Cook,*
  610 B.R. 852 (Bankr. N.D. Ill. 2019) ............................................................ 9, 20

*In re Cruz,*
  No. 18-10208, 2020 WL 5083326 (Bankr. S.D. Tex. Aug. 27, 2020) ......................9

*Curtis v. Loether,*
  415 U.S. 189 (1974) ................................................................................... 12, 21

*Dairy Queen, Inc. v. Wood,*
  369 U.S. 469 (1962) ...................................................................................... 6, 7

*Davis v. SHLC Holdings, LLC (In re Gillespie),*
  Adv. No. 14-1098, Dkt. No. 29 (N.D. Cal. June 4, 2015) .....................................10

*In re Deighan Law LLC,*
  637 B.R. 888 (Bankr. M.D. Ala. Mar. 4, 2022) ...................................................9

*First Nat. Bank of Waukesha v. Warren,*
  796 F.2d 999 (7th Cir. 1986) ...................................................................*passim*

*Gargula v. Deighan Law LLC (In re Burns),*
  No. 21-417, 2022 WL 2010429 (S.D. Ill. June 6, 2022) ........................................5

*Gargula v. Deighan Law LLC (In re Staten),*
  No. 21-794, 2022 WL 2668475 (S.D. Ill. July 11, 2022) ................................ 10, 20

*In re Gavin,*
  181 B.R. 814 (Bankr. E.D. Pa.), *opinion adopted,* 184 B.R. 670 (E.D. Pa.
  1995) ...........................................................................................................10

*In re Gistis,*
  No. 18-10710, 2020 WL 7062287 (Bankr. D. Me. Nov. 20, 2020) ........................10

*Gould v. Clippard,*
  340 B.R. 861 (M.D. Tenn. 2006) ......................................................................11

*Granfinanciera, S.A. v. Nordberg,*
   492 U.S. 33 (1989) ................................................................................*passim*

*Grayton v. United States Tr. (In re Perez),*
   No. 20-cv-1616, 2021 WL 1626337 (S.D. Cal. Apr. 27, 2021) ..................................11

*Hale v. U.S. Tr.,*
   509 F.3d 1139 (9th Cir. 2007) ...........................................................11, 13, 14

*Matter of Hallahan,*
   936 F.2d 1496 (7th Cir. 1991) ................................................................ 23, 24

*In re Hanawahine,*
   577 B.R. 573 (Bankr. D. Haw. 2017) ..............................................................10

*Henderson v. Legal Helpers Debt Resol., L.L.C. (In re Huffman),*
   505 B.R. 726 (Bankr. S.D. Miss. 2014) ...................................................... 10, 20

*Hills v. McDermott (In re Wicker),*
   702 F.3d 874 (6th Cir. 2012) ....................................................................9

*Hobbs v. Chesson,*
   No. 16-00201, 2018 WL 4172667 (Bankr. W.D. La. Aug. 29, 2018) .......................10

*Jonak v. McDermott,*
   511 B.R. 586 (D. Minn. 2014) ...................................................................9

*Katchen v. Landy,*
   382 U.S. 323 (1966) ........................................................... 16, 17, 21, 22

*Law Sols. of Chicago LLC v. Corbett,*
   971 F.3d 1299 (11th Cir. 2020) .......................................................15, 24, 28

*Marshall v. Bourque (In re Hartman),*
   208 B.R. 768 (Bankr. D. Mass. 1997) ..........................................................10

*Maxwell v. Kemp (In re Beale),*
   410 B.R. 613 (N.D. Ill. 2009) ....................................................................28

*In re Mem'l Ests., Inc.,*
   950 F.2d 1364 (7th Cir. 1991) ............................................................. 15, 24

*Milavetz, Gallop & Milavetz, P.A.,*
   559 U.S. 229, 232 (2010)..................................................................2, 18, 19, 24

iv

*In re Njoku*,
   No. 18-30558, 2018 WL 39464863 (Bankr. N.D. Ohio Aug. 14, 2018) ..................10

*Orton v. Hoffman (In re Kayne)*,
   453 B.R. 372 (B.A.P. 9th Cir. 2011) ...................................................................9

*In re Paciocco*,
   No. 15-00302, 2015 WL 5178036 (Bankr. E.D. Va. Sept. 3, 2015) ...........................10

*Panda Energy Int'l, Inc. v. Factory Mut. Ins.*,
   Nos. 11-003, 10-2541, 2011 WL 610016 (N.D. Tex. Feb. 14, 2011) ........................28

*Picard v. Saren-Lawrence*,
   Nos. 17-5157, 17-5162, 17-5163, 2018 WL 4659476 (S.D.N.Y. Sept.
   11, 2018) .....................................................................................................28

*Matter of Rhone-Poulenc Rorer, Inc.*,
   51 F.3d 1293 (7th Cir. 1995) ..........................................................................26

*Stern v. Marshall*,
   564 U.S. 462 (2011) ........................................................................17, 18, 20

*Tate v. Citimortgage, Inc. (In re Tate)*,
   No. 09-0039, 2010 WL 923630 (S.D. Ala. Mar. 9, 2010) ....................................28

*Tull v. United States*,
   481 U.S. 412 (1987) ...................................................................................12, 14

*In re Volpert*,
   110 F.3d 494 (7th Cir. 1997) ........................................................................15, 24

*Ex parte Wall*,
   107 U.S. 265 (1883) ....................................................................................14, 22

*Wellness Int'l Network, Ltd. v. Sharif*,
   575 U.S. 665, 135 S. Ct. 1932 (2015) .............................................................23

*In re White*,
   Nos. 17-40093, 17-40462, 17-40599, 17-00999, 16-72114, 17-70171,
   2018 WL 1902491 (Bankr. N.D. Ala, Apr. 19, 2018), *aff'd sub nom.*,
   *Law Sols. of Chicago LLC v. Corbett*, No. 18-cv-00677, 2019 WL
   1125568 (N.D. Ala. Mar. 12, 2019), *aff'd*, 971 F.3d 1299 (11th Cir.
   2020) ...........................................................................................................9

*In re Wood*,
    210 U.S. 246 (1908) ............................................................ 13, 16, 22, 23

**Statutes**

11 U.S.C. § 101(3) ........................................................................ 3, 21

11 U.S.C. § 101(4A) ...................................................................... 2, 17

11 U.S.C. § 101(12A) .................................................................... 2, 17

11 U.S.C. § 101(13) ...........................................................................16

11 U.S.C. § 110 .................................................................2, 8, 10, 11

11 U.S.C. § 110(i)(1)(B) ................................................................8, 9

11 U.S.C. § 110(*l*) ..............................................................................8

11 U.S.C. § 329(b) ...............................................................................4

11 U.S.C. § 526 .........................................................................*passim*

11 U.S.C. § 526(a) ...........................................................................1, 2

11 U.S.C. § 526(a)(1) ..................................................................... 4, 19

11 U.S.C. § 526(a)(3) ..................................................................... 4, 19

11 U.S.C. § 526(c)(1) ...........................................................................3

11 U.S.C. § 526(c)(2) .................................................................. 3, 20, 21

11 U.S.C. § 526(c)(3)-(4) ...................................................................3

11 U.S.C. § 526(c)(5) ................................................................*passim*

11 U.S.C. § 526(c)(5)(B) ................................................................ 5, 20

11 U.S.C. § 526(d) .............................................................................15

11 U.S.C. § 707(b)(4)(B) ...................................................................8

28 U.S.C. § 157 ..................................................................................23

28 U.S.C. § 157(a) .............................................................................22

28 U.S.C. § 157(e) ................................................................................................22

28 U.S.C. § 581(a)(11) ..........................................................................................19

28 U.S.C. § 1292(b) ................................................................................................5

**Other Authorities**

Fed. R. Bankr. P. 2017 ...........................................................................................4

Fed. R. Bankr. P. 9011 ...............................................................................8, 15, 24

U.S. Const., amend. VII .........................................................................................8

Nancy J. Gargula, United States Trustee, respectfully opposes the Petition for

Writ of Mandamus filed by Deighan Law LLC f/k/a Law Solutions Chicago LLC,

d/b/a Upright Law LLC ("Upright") and Upright attorney James E. Ford.

## INTRODUCTION

Petitioners seek mandamus based on the novel claim that they have a right to a

jury trial in a bankruptcy proceeding in which the federal government seeks an

injunction and civil penalties under 11 U.S.C. § 526(c)(5) for Petitioners' alleged

violations of Bankruptcy Code provisions.  The extraordinary writ of mandamus is

unwarranted because Petitioners have no right to a jury on these statutory claims

much less a clear and undisputed one.

Petitioners cite zero cases holding such a right exists for claims under section

526(c)(5); indeed, the law is uniformly to the contrary.  Moreover, any right to a jury

trial can be fully vindicated on appeal should the Petitioners not prevail on the merits.

Interlocutory relief through mandamus is thus unwarranted.

## BACKGROUND

### I.     Statutory Framework

The Bankruptcy Code prohibits "debt relief agencies" from failing to provide

promised services or misrepresenting the services they will provide to "assisted

persons."

Specifically, 11 U.S.C. § 526(a) provides:

A debt relief agency shall not—

1

(1) fail to perform any service that such agency informed an assisted person or prospective assisted person it would provide in connection with a case or proceeding under this title; . . .

(3) misrepresent to any assisted person or prospective assisted person, directly or indirectly, affirmatively or by material omission, with respect to—

(A) the services that such agency will provide to such person; or

(B) the benefits and risks that may result if such person becomes a debtor in a case under this title.

11 U.S.C. § 526(a).

A "debt relief agency" is defined, with certain exceptions not relevant here, as "any person who provides any bankruptcy assistance to an assisted person in return for the payment of money or other valuable consideration, or who is a bankruptcy petition preparer under section 110." 11 U.S.C. § 101(12A). Debt relief agencies include attorneys such as Petitioners who otherwise meet the definition by appearing in or providing advice with respect to a bankruptcy case. *Milavetz, Gallop & Milavetz, P.A.*, 559 U.S. 229, 232 (2010).

"[B]ankruptcy assistance" is defined as "any goods or services sold or otherwise provided to an assisted person with the express or implied purpose of providing information, advice, counsel, document preparation, or filing, or attendance at a creditors' meeting or appearing in a case or proceeding on behalf of another or providing legal representation with respect to a case or proceeding under this title." *Id.* § 101(4A). An "assisted person" is defined as "any person whose debts consist

primarily of consumer debts and the value of whose nonexempt property is less than $226,850." *Id.* § 101(3) & note (Adjustment of Dollar Amounts).

Subsection (c) of the statute details the consequences for its violation. Any contract for bankruptcy assistance that does not comply with section 526's requirements is deemed void. *Id.* § 526(c)(1). If a debt relief agency "intentionally or negligently" violates any provision of section 526, the assisted person may recover the fees charged, "actual damages," and reasonable attorneys' fees and costs. *Id.* § 526(c)(2). In addition, the statute provides States the ability to bring an action to enjoin violations or to recover on behalf of their residents "the actual damages of assisted persons," and confers concurrent jurisdiction in the federal courts of the State over such actions. *Id.* § 526(c)(3)-(4).

The United States Trustee's action below, however, was brought under section 526(c)(5). That section provides that if a debt relief agency intentionally violates section 526 or engages in a "pattern or practice" of violating it, the court has discretion, on its own motion or a motion by the United States Trustee or the debtor, to enjoin those violations or impose civil penalties:

> Notwithstanding any other provision of Federal law and in addition to any other remedy provided under Federal or State law, if the court, on its own motion or on the motion of the United States trustee or the debtor, finds that a person intentionally violated this section, or engaged in a clear and consistent pattern or practice of violating this section, the court may—
>
> (A) enjoin the violation of such section; or

3

(B) impose an appropriate civil penalty against such person.

11 U.S.C. § 526(c)(5).

## II.    Factual Background

On December 31, 2020, the United States Trustee commenced an adversary proceeding against Petitioners.  *See* Pet. Appx., Tab 4.  The government's complaint alleges that Petitioners excessively delayed the filing of clients' bankruptcy cases contrary to their representations and promises in violation of 11 U.S.C. § 526(a)(1) and (3).  For example, it alleges that despite promising to start work "immediately," Petitioners delayed filing the bankruptcy case below for over a year, during which time the debtors were sued causing them to needlessly lose hundreds of dollars.  *Id.* ¶¶ 125-130, 170.  The complaint alleges Petitioners' violations were part of a clear and consistent pattern or practice or were done intentionally and thus seeks injunctive relief and civil penalties under 11 U.S.C. § 526(c)(5).  The complaint also seeks the return to the debtors of all fees they paid under 11 U.S.C. § 329(b) and Bankruptcy Rule 2017 because the fees charged were excessive.

Petitioners filed a motion to withdraw the reference, arguing among other things that they had a Seventh Amendment right to a jury trial on the claim for civil penalties under 11 U.S.C. § 526(c)(5).  The district court denied the motion. Regarding the jury-trial issue, the court held that the Seventh Amendment does not require a jury trial because the United States Trustee's claims assert public, not private,

rights and Congress assigned the adjudication of such claims to the bankruptcy court, a specialized court of equity sitting without a jury. Pet. Appx. Tab 2, Slip Op. at 7-9.

Petitioners then asked the district court to revise its order to certify under 28 U.S.C. § 1292(b) this question for interlocutory appeal: "In an adversary proceeding in which the UST seeks civil penalties against the Defendants pursuant to 11 U.S.C. § 526 based, in part, on the Defendants' alleged misrepresentations, are the Defendants' entitled to a trial by jury under the Seventh Amendment?" The district court denied that motion, too, because Petitioners did not meet two of the four criteria for section 1292(b) certification. *See Gargula v. Deighan Law LLC (In re Burns)*, No. 21-417, 2022 WL 2010429, at *3 (S.D. Ill. June 6, 2022). First, Petitioners did not demonstrate a substantial likelihood of reversal because they failed to cite any cases holding there is a jury right for claims under 11 U.S.C. § 526(c)(5)(B), but several courts had rejected that notion and many had imposed civil penalties under section 526 without holding a jury trial. *Id.* Second, an immediate appeal would not materially advance the litigation. *Id.*

Petitioners now seek a writ of mandamus from this Court directing the district court to withdraw the reference. They also ask the Court to include in its order "a determination that: (a) Petitioners are entitled to a jury trial on the UST's claims under 11 U.S.C. § 526; and (b) the order is deemed effective immediately, such that all future proceedings related to the Burns Adversary will be conducted in the District Court." Pet at 1-2. This Court should deny the petition for the reasons explained below.

## ARGUMENT

"[O]nly exceptional circumstances amounting to a judicial usurpation of power . . . or a clear abuse of discretion," justify the "extraordinary remedy" of a writ of mandamus. *Cheney v. U.S. Dist. Court*, 542 U.S. 367, 381 (2004) (internal quotation marks omitted). There are three conditions to obtain a writ of mandamus: (1) the right to the writ is "clear and indisputable"; (2) the petitioner must show irreparable harm because the challenged order is not effectively reviewable at the end of the case; and (3) the appellate court has determined in its discretion that issuance of the writ is otherwise appropriate. *Id.* at 381-82. None are met here.

This Court requires more than just an assertion of a jury right before granting the extraordinary writ of mandamus. In particular, this Court's order inviting a response to the petition states: "Any answer should address whether the petition satisfies this court's interpretation of the test for the availability of mandamus under *Beacon Theatres, Inc. v. Westover*, 359 U.S. 500 (1959). *See, e.g., Caldwell-Baker Co. v. Parsons*, 392 F.3d 886, 888 (7th Cir. 2004); *First Nat. Bank of Waukesha v. Warren*, 796 F.2d 999, 1002–06 (7th Cir. 1986)." The petition does not satisfy that test.

In *Bank of Waukesha* and *Caldwell-Baker*, this Court applied Supreme Court precedent including *Beacon Theatres*, which granted certiorari from the denial of mandamus where there was a clear right to a jury trial on legal claims that would be lost if equitable claims were separately tried first. *Beacon Theatres,* 359 U.S. at 510-11; *accord Dairy Queen, Inc. v. Wood*, 369 U.S. 469, 472-73 (1962) (cited in Pet. at 8). This

Court rejected the contention that *Beacon Theatres* and *Dairy Queen* entitled the petitioner to mandamus whenever a jury right is asserted. *Bank of Waukesha*, 796 F.2d at 1001-06; *Caldwell-Baker*, 392 F.3d at 888. Rather, a mandamus petitioner must show both that there is a "clear right" to a jury trial and that the jury right cannot be "vindicated upon appeal from a final judgment." *Bank of Waukesha*, 796 F.2d at 1006; *accord Caldwell-Baker*, 392 F.3d at 888 ("If denial of a jury trial threatens injury that is irreparable in the sense that appellate review would not avail—perhaps because the judge's decision would be preclusive in some other piece of litigation—then mandamus could be available."). Thus, in *Caldwell-Baker* this Court denied a writ of mandamus to order withdrawal of the reference in a bankruptcy proceeding although the petitioner claimed a right to a jury trial. *Caldwell-Baker*, 392 F.3d at 887-88.

Here, Petitioners do not have a clear and indisputable right to a jury trial on the section 526(c)(5) claim. And even if they did, an ordinary-course post-trial appeal would fully vindicate that right. Further, this is not an appropriate case for granting the extraordinary writ of mandamus because it presents the same evils as any interlocutory appeal: piecemeal appeals that could be avoided because the issue presented may be moot by the time the adversary proceeding concludes. The Court thus should deny the petition.

## I.  There Is No Clear and Indisputable Right to a Jury Trial.

The Seventh Amendment provides that "[i]n Suits at common law, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be

preserved." U.S. Const., amend. VII. "The phrase 'Suits at common law' has been construed to refer to cases tried prior to the adoption of the Seventh Amendment in courts of law in which jury trial was customary as distinguished from courts of equity or admiralty in which jury trial was not." *Atlas Roofing Co. v. Occupational Safety & Health Rev. Comm'n*, 430 U.S. 442, 449 (1977). The statutorily created claim for civil penalties under section 526(c)(5), which can only be brought in a bankruptcy proceeding on the court's own motion or by the debtor or the United States Trustee, 11 U.S.C. § 526(c)(5), is not a suit at common law within the scope of the Seventh Amendment. There is, at a minimum, no clear and indisputable right to jury trial on a section 526(c)(5) claim.

### A. Cases addressing claims under section 526(c)(5) prove that there is no clear and indisputable right to a jury trial.

The cases refute Petitioners' assertion that they have a clear and indisputable right to a jury trial. Pet. at 12. They cite no case finding a jury right under section 526(c)(5), or under any other Bankruptcy Code provision authorizing civil penalties, such as section 110 or section 707. 11 U.S.C. § 110(i)(1)(B) (authorizing $2,000 penalty for violation of provisions regarding bankruptcy petition preparers); *id.* § 110(*l*) (authorizing fines for violation of provisions regarding bankruptcy petition preparers); *id.* § 707(b)(4)(B) (authorizing civil penalty against attorneys who violate Bankruptcy Rule 9011).

To the contrary, there are over a dozen cases in which courts have imposed civil penalties under those provisions—often times against Upright—without a jury trial, including cases affirmed on appeal by the Fifth, Sixth, and Eleventh Circuits. *See, e.g., Hills v. McDermott (In re Wicker)*, 702 F.3d 874, 877-78 (6th Cir. 2012) (affirming fines and civil penalties under sections 110 and 526); *In re Deighan Law LLC*, 637 B.R. 888, 923 (Bankr. M.D. Ala. Mar. 4, 2022) (imposing $500,000 civil penalty under sections 526 and 707(b)(4)(B) against Upright); *In re Cruz*, No. 18-10208, 2020 WL 5083326, at *34 (Bankr. S.D. Tex. Aug. 27, 2020) (imposing $8,475 civil penalty under section 526 against Upright); *In re Cook*, 610 B.R. 852, 869 (Bankr. N.D. Ill. 2019) (imposing $10,000 civil penalty under section 526 against Upright); *In re White*, Nos. 17-40093, 17-40462, 17-40599, 17-00999, 16-72114, 17-70171, 2018 WL 1902491, at *8-9 (Bankr. N.D. Ala, Apr. 19, 2018) (imposing $150,000 in civil penalties under sections 526 and 707(b)(4)(B) against Upright), *aff'd sub nom., Law Sols. of Chicago LLC v. Corbett*, No. 18-cv-00677, 2019 WL 1125568 (N.D. Ala. Mar. 12, 2019), *aff'd*, 971 F.3d 1299, 1320 (11th Cir. 2020); *In re Banks*, No. 17-10456, 2018 WL 735351, at *20-21 (Bankr. W.D. La. Feb. 6, 2018) (imposing agreed $5,000 civil penalty under section 526(c) and imposing other sanctions against Upright), *aff'd* 592 B.R. 624 (W.D. La. 2018), *aff'd*, 770 F. App'x 168 (5th Cir. 2019).[1]

---

[1] *See also Jonak v. McDermott*, 511 B.R. 586, 599 (D. Minn. 2014) (affirming $2,000 per-case penalty under section 110(i)(1)(B)); *Orton v. Hoffman (In re Kayne)*, 453 B.R. 372, 386-87 (B.A.P. 9th Cir. 2011) (affirming $20,000 civil penalty under section

The notion that bankruptcy attorneys—who have subjected themselves to the disciplinary authority of the bankruptcy court—have a right to a jury trial under a civil penalty statute for attorney misconduct is so devoid of merit that there are few cases in which it has even been asserted.  But when it has been, courts have rejected it.  *See Gargula v. Deighan Law LLC (In re Staten)*, No. 21-794, 2022 WL 2668475, at *5 (S.D. Ill. July 11, 2022) (rejecting Upright's argument that there is a jury right for a civil-penalties claim under section 526(c)(5)); *In re Bascus*, 548 B.R. 742, 748 (Bankr. S.D. Tex. 2016) (holding there is no right to a jury trial on a claim for civil penalties under section 526); *Davis v. SHLC Holdings, LLC (In re Gillespie)*, Adv. No. 14-1098, Dkt. No. 29, at 2 & n.1 (N.D. Cal. June 4, 2015) (attached as Exhibit A) (granting United States

---

707(b)(4)(B)); *In re Burnett*, No. 21-02018, 2022 WL 802586, at *13 (Bankr. D.S.C. Mar. 16, 2022) (imposing $25,000 civil penalty under section 526); *In re Gistis*, No. 18-10710, 2020 WL 7062287, at *9 (Bankr. D. Me. Nov. 20, 2020) (imposing $6,600 civil penalty under section 707(b)(4)(B)); *In re Brackens*, 598 B.R. 420, 429 (Bankr. W.D. La. 2019) (imposing fines under section 110); *Hobbs v. Chesson*, No. 16-00201, 2018 WL 4172667, at *12 (Bankr. W.D. La. Aug. 29, 2018) (imposing $5,000 civil penalty under section 526); *In re Njoku*, No. 18-30558, 2018 WL 39464863, at *6 (Bankr. N.D. Ohio Aug. 14, 2018) (imposing $7,500 fine under section 110); *In re Hanawahine*, 577 B.R. 573, 580 (Bankr. D. Haw. 2017) (imposing $4,311 civil penalty under section 526); *In re Paciocco*, No. 15-00302, 2015 WL 5178036, at *9 (Bankr. E.D. Va. Sept. 3, 2015) (imposing $10,000 civil penalty under section 526); *Henderson v. Legal Helpers Debt Resol., L.L.C. (In re Huffman)*, 505 B.R. 726, 766 (Bankr. S.D. Miss. 2014) (imposing $28,000 civil penalty under section 526); *In re Att'y & Debt Relief Agency*, No. 9:13-mp-007, 2013 WL 6036844, at *2 (Bankr. M.D. Fla. Nov. 13, 2013) (imposing $1,500 civil penalty under section 526); *Marshall v. Bourque (In re Hartman)*, 208 B.R. 768, 779-80, 781 (Bankr. D. Mass. 1997) (imposing $8,500 in fines under section 110); *In re Gavin*, 181 B.R. 814, 825–26 (Bankr. E.D. Pa.), *opinion adopted*, 184 B.R. 670 (E.D. Pa. 1995) (imposing $1,000 fine under section 110).

Trustee's motion to strike jury demand on its section 526(c)(5) complaint); *Cf. Hale v. U.S. Tr.*, 509 F.3d 1139, 1144, 1147 (9th Cir. 2007) (holding attorney had no right to a jury in bankruptcy proceeding in which court ordered him to pay $2,000 sanction); *Grayton v. United States Tr. (In re Perez)*, No. 20-cv-1616, 2021 WL 1626337, at *4 (S.D. Cal. Apr. 27, 2021) (denying interlocutory appeal of bankruptcy court order holding there is no jury trial right for a claim under 11 U.S.C. § 110); *Gould v. Clippard*, 340 B.R. 861, 866, 881 (M.D. Tenn. 2006) (holding there is no right to a jury trial in an action under section 110 to impose fines against bankruptcy petition preparers).

Petitioners' assertion that they have a "clear and indisputable" right to a jury trial on a claim under section 526(c)(5), Pet. at 13, cannot be reconciled with these cases, which show just the opposite: a uniform view that such claims do not require a jury.

## B. Petitioners' unsupported arguments for a jury right despite uniformly contrary cases fail to show a clear and indisputable right.

Petitioners' arguments for their supposedly indisputable right to a jury are not premised on any case recognizing such a right, but on their interpretation of the Supreme Court's decision in *Granfinanciera, S.A. v. Nordberg*, 492 U.S. 33 (1989), which involved neither civil penalties nor attorney misconduct. *See* Pet. at 13-19. Petitioners' unsupported arguments do not demonstrate that, contrary to the district court's holding—and the holdings and practices of the many courts cited above, *supra*, Part I.A—they have a clear and indisputable right to a jury trial. And even if there

11

otherwise would be a jury right, Petitioners have consented to proceeding without a jury by entering their appearance in the bankruptcy case below.

### 1. Supreme Court precedent requires a jury only for legal claims that involve matters of private right.

The Supreme Court has held that in determining whether the Seventh Amendment applies to a statutory claim, the court should examine both the nature of the action and the remedy sought. *Granfinanciera*, 492 U.S. at 42; *Tull v. United States*, 481 U.S. 412, 417-18 (1987). "First, we compare the statutory action to 18th-century actions brought in the courts of England prior to the merger of the courts of law and equity. . . . Second, we examine the remedy sought and determine whether it is legal or equitable in nature." *Tull*, 481 U.S. at 417-18. Characterizing the relief sought is more important than "an abstruse historical search for the nearest 18th century analog." *Id.* at 421 (internal quotation marks omitted).

Analyzing these two factors is not the end of the analysis. "If, on balance, these two factors indicate that a party is entitled to a jury trial under the Seventh Amendment, [the court] must decide whether Congress may assign and has assigned resolution of the relevant claim to a non-Article III adjudicative body that does not use a jury as factfinder." *Granfinanciera*, 492 U.S. at 42. "The Seventh Amendment protects a litigant's right to a jury trial only if a cause of action is legal in nature and it involves a matter of 'private right.'" *Id.* at 42 n.4; *see also Curtis v. Loether*, 415 U.S. 189, 195 (1974) ("[Supreme Court cases] uphold congressional power to entrust

enforcement of statutory rights to . . . [a] specialized court of equity free from the strictures of the Seventh Amendment.").  Thus, "[i]f a claim that is legal in nature asserts a 'public right,' . . . then the Seventh Amendment does not entitle the parties to a jury trial if Congress assigns its adjudication to . . . [a] specialized court of equity." *Granfinanciera*, 492 U.S. at 42 n.4.

### 2. There is no common law analog to the United States Trustee's claim under section 526(c)(5).

 In determining the nature of the claim, the Court looks to whether a statutory claim is "analogous to common-law causes of action ordinarily decided in English law courts in the late 18th century, as opposed to those customarily heard by courts of equity or admiralty."  *Granfinanciera*, 492 U.S. at 41.

There is no common law analog to section 526(c)(5).  Indeed, over a hundred years ago, the Supreme Court described a predecessor statute allowing for the recovery of excessive fees paid in contemplation of bankruptcy as "*sui generis.*"  *In re Wood*, 210 U.S. 246, 253 (1908).  Likewise, the Ninth Circuit has explained: "Determining the reasonableness of a debtor's attorney fees is not analogous to a common-law cause of action ordinarily decided in English law courts in the late 18th century; instead, it is closely integrated into the public regulatory scheme of bankruptcy law that Congress created."  *Hale*, 509 F.3d at 1147.  The Ninth Circuit thus concluded that there was no jury right in a bankruptcy proceeding to adjudicate

the reasonableness of a pre-petition legal fee in a case where the court also ordered the attorney to pay a $2,000 sanction. *Id.* at 1144, 1147.

Petitioners argue that a jury is required based on cases holding that civil penalties are a legal remedy. Pet. at 15. But the cases on which Petitioners rely did not address civil penalties arising in contexts, such as attorney misconduct or bankruptcy proceedings, in which juries historically were not used. *See, e.g., Tull*, 481 U.S. 412 (addressing a claim under the Clean Water Act). Even assuming, *arguendo*, that the nature of the remedy here is viewed as legal, that is only one consideration under *Granfinanciera*.

And Petitioners present no evidence of any eighteenth-century common law analog to section 526(c)(5). Instead, petitioners attempt to analogize it to common law claims for breach of contract or misrepresentation. Pet. at 13-14. But those actions between private parties to recover compensatory damages are not analogous to this statutory proceeding for discretionary civil penalties prosecuted by the United States or a federal judge, as section 526(c)(5) authorizes.

Rather, section 526(c)(5) is most analogous to two kinds of actions that historically were adjudicated without a jury: courts' adjudication of attorney discipline issues and bankruptcy courts' oversight of fees paid for bankruptcy assistance.

First, courts historically have had summary jurisdiction to discipline attorneys that appear before them; plenary suits with a jury trial were not required. *See Ex parte Wall*, 107 U.S. 265, 273, 289 (1883) (holding court could disbar and fine an attorney

14

under its "summary jurisdiction" without a "plenary suit and a trial by jury"). *See also Chambers v. NASCO, Inc.*, 501 U.S. 32, 43-45 (1991) (holding courts have inherent power to impose sanctions on a party); *Law Sols. of Chicago LLC v. Corbett*, 971 F.3d 1299, 1316 (11th Cir. 2020) (holding bankruptcy court had jurisdiction to impose sanctions on Upright under section 526 even in closed cases); *In re Volpert*, 110 F.3d 494, 500-501 (7th Cir. 1997) (holding bankruptcy courts have authority under 11 U.S.C. § 105 to sanction attorneys for vexatious conduct); *In re Mem'l Ests., Inc.*, 950 F.2d 1364, 1370 (7th Cir. 1991) (holding bankruptcy court had jurisdiction to impose sanctions on attorney under Bankruptcy Rule 9011).

Section 526(d) drives home this point. It provides that section 526(c)(5) should not be read as superseding state and federal attorney disciplinary regimes. 11 U.S.C. § 526(d). Were section 526(c)(5) obviously different from those, a notion that underpins the petition, then section 526(d)'s clarification would be unnecessary.

Second, bankruptcy courts historically have had authority to examine a debtor's legal fees, including those paid before bankruptcy was filed. The Supreme Court thus has held that a court sitting in bankruptcy without a jury may order an attorney who received prepetition payments from a debtor to return amounts in excess of a reasonable fee. *See Conrad, Rubin & Lesser v. Pender*, 289 U.S. 472, 475 (1933)

(affirming order of bankruptcy referee[2] requiring attorney to return excessive fees paid prepetition in a "summary proceeding" without a "plenary suit"); *Wood*, 210 U.S. at 258 (1908) (holding there was no jury right under section 60(d) of the Bankruptcy Act of 1898, which allowed district courts sitting in bankruptcy to examine the reasonableness of legal fees paid prepetition); *accord Katchen v. Landy*, 382 U.S. 323, 333 (1966) (recognizing that proceedings under the former Bankruptcy Act "for examination of the reasonableness of amounts paid in contemplation of bankruptcy to an attorney for services to be rendered for the bankrupt are within the summary jurisdiction of the [bankruptcy] referee"). Such non-jury proceedings did not violate the Seventh Amendment because the statute "in effect confers a special jurisdiction in a bankruptcy proceeding; it is only available when property has been transferred in contemplation of the filing of a petition in bankruptcy." *Wood*, 210 U.S. at 258.

The same is true under section 526(c)(5). That provision also "confers a special jurisdiction in a bankruptcy proceeding" that is "only available when property has been transferred in contemplation of the filing of a petition in bankruptcy." *Wood*, 210 U.S. at 258. Under subsection (c)(5), only a court sitting in bankruptcy, a bankruptcy debtor, or the federal government through the United States Trustee may bring a motion seeking civil penalties. 11 U.S.C. § 526(c)(5); *see also id.* § 101(13)

---

[2] Bankruptcy judges replaced referees in 1978 with the enactment of the Bankruptcy Code.

(defining "debtor").  And that motion can only be brought against a person who receives "money or other valuable consideration" and provides "bankruptcy assistance," 11 U.S.C. § 101(12A), that is, goods or services "with respect to a case or proceeding under" the Bankruptcy Code, *id.* § 101(4A).  To hold that this statutory claim cannot be "tried in the bankruptcy court in the normal manner" would "dismember" the scheme that Congress prescribed in section 526(c)(5).  *Katchen*, 382 U.S. at 339.

### 3.    Section 526(c)(5) is a matter of public rights that Congress intended to be adjudicated without a jury.

Even if one concludes that the balance of the first two *Granfinanciera* factors suggests that a claim for civil penalties under section 526(c)(5) is a legal claim, a jury is still not required because section 526(c)(5) is a matter of public rights that Congress intended to be tried in a forum without a jury.  *Granfinanciera*, 492 U.S. at 42.

Although the Court's "discussion of the public rights exception . . . has not been entirely consistent," *Stern v. Marshall*, 564 U.S. 462, 488 (2011), its decisions provide some guidance.  The exception includes "cases in which the Government sues in its sovereign capacity to enforce public rights created by statutes within the power of Congress to enact."  *Atlas Roofing*, 430 U.S. at 450; *accord Granfinanciera*, 492 U.S. at 51.  In addition, "if a statutory cause of action is legal in nature, the question whether the Seventh Amendment permits Congress to assign its adjudication to a tribunal that does not employ juries as factfinders requires the same answer as the

question whether Article III allows Congress to assign adjudication of that cause of action to a non-Article III tribunal." *Id.* at 53.  An Article III forum is required "[w]hen a suit is made of 'the stuff of the traditional actions at common law tried by the courts at Westminster in 1789,'" *Stern*, 564 U.S. at 484 (quoting *N. Pipeline Constr. Co v. Marathon Pipe Line Co.*, 458 U.S. 50, 90 (1982) (Rehnquist, J., concurring in judgment)), as distinguished from claims where the "right of recovery [is] created by federal bankruptcy law," *id.* at 498.  While Congress may not transmute pre-existing common law rights into public rights through a "purely taxonomic change," *Granfinanciera*, 492 U.S. at 60-61, it "may fashion causes of action that are closely *analogous* to common-law claims and place them beyond the ambit of the Seventh Amendment by assigning their resolution to a forum in which jury trials are unavailable," *id.* at 52 (emphasis in original).

Section 526(c)(5) addresses a matter of public rights, not purely private ones. As the district court correctly held, Congress created the cause of action in section 526(c)(5) to prevent a public harm: "abusive practices by debt relief agencies."  Slip Op. at 8.  And its authorization of the United States, federal judges, and bankruptcy debtors to seek civil penalties is a "right of recovery created by federal bankruptcy law." *Stern*, 564 U.S. at 498.

In holding that section 526 applies to attorneys, the Supreme Court explained that "Congress and the bankruptcy courts have long overseen aspects of attorney conduct in this area of substantial federal concern." *Milavetz*, 559 U.S. at 237; *accord*

18

*Conrad, Rubin & Lesser*, 289 U.S. at 477. Even more to the point, the Supreme Court found that the "rules of professional conduct in §§ 526(a)(1)-(3) *and the remedies for their violation in § 526(c)* indicate that Congress was concerned with actions that threaten to harm debtors or creditors." *Milavetz*, 559 U.S. at 245 (emphasis added). As explained by the Second Circuit: "[A] debt relief agency does not engage in a merely private commercial transaction with its client. Its activities implicate the nation's bankruptcy system, a uniquely federal arena . . . . The government's significant interest in avoiding confusion and deception in the operation of the system is self-evident." *Conn. Bar Assoc. v. United States*, 620 F.3d 81, 96 (2d Cir. 2010); *accord Bascus*, 548 B.R. at 748.

Acknowledging, as they must, that section 526(c)(5) protects the public interest, Pet. at 19, Petitioners argue that it nevertheless is not a matter of "public right" under *Granfinanciera* because it merely duplicates claims that could be brought at common law and because Congress did not assign adjudication of section 526(c)(5) claims to a non-jury factfinder. Pet. at 16-18. Petitioners are wrong on both counts.

First, in section 526(c)(5), Congress did not "simply reclassif[y] a pre-existing, common-law cause of action that was not integrally related to the reformation of debtor-creditor relations." *Granfinanciera*, 492 U.S. at 61. Rather, Congress created a new action that could be brought by the debtor, the bankruptcy court *sua sponte*, or by the United States Trustee, a Justice Department official, 28 U.S.C. § 581(a)(11), integrally connected to the Code's broader regulation of debtors' attorneys. 11 U.S.C. § 526(c)(5). That this action was brought by the federal government in its sovereign

capacity supports applying the public rights exception. "Congress may effectively supplant a common-law cause of action carrying with it a right to a jury trial with a statutory cause of action shorn of a jury trial right if that statutory cause of action inheres in, or lies against, the Federal Government in its sovereign capacity." *Granfinanciera*, 492 U.S. at 53.

Further, unlike the common law claims Upright cites, the purpose of the civil penalty is not compensation. That is provided for in a different subparagraph of section 526(c). *Compare* 11 U.S.C. § 526(c)(2) (providing action for "actual damages"). Instead, "[i]mposition of a civil penalty under § 526(c)(5)(B) is discretionary," *In re Cook*, 610 B.R. at 869, and "largely motivated by factors of deterrence and the culpability of the parties," *Henderson v. Legal Helpers Debt Resol., L.L.C. (In re Huffman)*, 505 B.R. 726, 766 (Bankr. S.D. Miss. 2014). *See* 11 U.S.C. § 526(c)(5) (providing the court "may" impose relief for violations).

Because a claim under section 526(c)(5) "flow[s] from a federal statutory scheme" and is "completely dependent upon adjudication of a claim created by federal law," it is not a claim that requires an Article III court. *Stern*, 564 U.S. at 493 (internal quotation marks omitted); *see also Staten*, 2022 WL 2668475, at *5 (holding public rights doctrine applied because "claims under 11 U.S.C. § 526 flow from a federal statutory scheme established by Congress to protect consumer debtors from certain conduct by debt relief agencies"). There is thus "no independent bar to the adjudication of [the] action by a nonjury factfinder." *Granfinanciera*, 492 U.S. at 53-54.

Second, Congress's intent that section 526(c)(5) would be heard in a non-jury bankruptcy proceeding is evident from its provisions because only parties to a bankruptcy proceeding—the debtor or the United States Trustee—or the court itself may bring a claim under section 526(c)(5).  11 U.S.C § 526(c)(5).  Again, this differs from the compensatory remedy afforded by section 526(c)(2), which authorizes "actual damages" recoveries by debtors, and non-debtor victims too.  *See* 11 U.S.C. § 101(3) (defining assisted person—the party who may sue under section 526(c)(2)— expansively as "any person" with primarily consumer debts and property worth less than a prescribed amount).

And bankruptcy proceedings are the quintessential example of equitable proceedings in which there is no jury right, as distinguished from "suits at common law" under the Seventh Amendment.  *See, e.g., Atlas Roofing*, 430 U.S. at 454 n.11 (explaining that the Court previously held there was no jury trial right "on the ground that a bankruptcy court, exercising its summary jurisdiction, was a specialized court of equity and constituted a forum before which a jury would be out of place and would go far to dismantle the statutory scheme"); *Curtis*, 415 U.S. at 195 ("[A] bankruptcy court has been traditionally viewed as a court of equity."); *Katchen*, 382 U.S. at 337 ("[T]he right of trial by jury, considered as an absolute right, does not extend to cases of equity jurisdiction. . . . So, in cases of bankruptcy, many incidental questions arise in the course of administering the bankrupt estate, which would ordinarily be pure cases at law, and in respect of their facts triable by jury, but, as belonging to the

bankruptcy proceedings, they become cases over which the bankruptcy court, which acts as a court of equity, exercises exclusive control."); *Wall*, 107 U.S. at 289 ("[T]he courts of chancery, bankruptcy, probate, and admiralty administer immense fields of jurisdiction without trial by jury.").

Petitioners argue that Congress did not "assign" adjudication of claims under 11 U.S.C. § 526(c)(5) "to a non-Article III adjudicative body" because: (1) under 28 U.S.C. § 157(a) district courts may also hear bankruptcy cases and thus assignment of bankruptcy cases to bankruptcy judges "is not mandated by statute," Pet. at 16-18, and (2) both district and bankruptcy courts may employ juries as factfinders because under 28 U.S.C. § 157(e) bankruptcy courts may, "[i]f the right to a jury trial applies," *id.*, conduct jury trials with all parties' consent, Pet. at 17.

Petitioners' argument lacks any support: they cite not a single case holding that Congress did not "assign" section 526(c)(5) claims—or any other matter under the Bankruptcy Code—to a non-jury factfinder based on these provisions of section 157. Section 157(a) and (e) apply to every bankruptcy matter. Thus, if Petitioners' argument were correct, the fact that a matter was a proceeding in bankruptcy would be irrelevant to whether there was a Seventh Amendment right to a jury. Over a century of decisional law is to the contrary. *See, e.g., Katchen*, 382 U.S. at 339 (holding there is no jury right in a preference action based on Congress's summary grant of jurisdiction to bankruptcy courts); *Wood*, 210 U.S. at 258 (holding attorney had no right to a jury in a bankruptcy proceeding before the district court regarding the

reasonableness of fees paid pre-petition); *Bascus*, 548 B.R. at 748 ("Congress, through

28 U.S.C. § 157[,] has assigned the adjudication of these claims [under section 526] to

bankruptcy courts.").  Whether a court is sitting in equity depends on the nature of

the proceeding—not the judge that hears it.  This is why bankruptcy proceedings are

equitable proceedings that do not require juries even when heard in district courts.

*See, e.g., Wood*, 210 U.S. at 249-50, 255-58 (discussing district court's jurisdiction over

bankruptcy proceeding with no jury right).

Because section 526(c)(5) is a matter of public rights that Congress assigned for

resolution in a bankruptcy proceeding, the Seventh Amendment does not apply.

> **4.    Petitioners consented to adjudication by an Article I judge sitting without a jury by entering their appearance in the bankruptcy case below.**

Even if, counterfactually, the Seventh Amendment applied to section 526(c)(5)

actions, Petitioners have no right to a jury for another reason: they waived it.

The right to a jury trial can be waived through implied consent.  *Wellness Int'l*

*Network, Ltd. v. Sharif*, 575 U.S. 665, 135 S. Ct. 1932, 1943, 1947-48 (2015); *Matter of*

*Hallahan*, 936 F.2d 1496, 1508 (7th Cir. 1991).  Here, Petitioners waived any jury right

by voluntarily entering their appearance in the debtors' bankruptcy case below as the

debtors' counsel.  *Cf. Hallahan*, 936 F.2d at 1508 ("Hallahan by choosing to file for

bankruptcy, waived any complaints he may have had about the jury trial rights that he

might have asserted outside the bankruptcy forum.").

As debtors' attorneys, Petitioners are subject to the bankruptcy court's jurisdiction to regulate their conduct as attorneys and debt relief agencies. *See Milavetz,* 559 U.S. at 237 ("Congress and the bankruptcy courts have long overseen aspects of attorney conduct in this area of substantial federal concern."); *Corbett,* 971 F.3d at 1316 (holding bankruptcy court had jurisdiction to impose sanctions on Upright under section 526 even in closed cases); *cf. Chambers v. NASCO, Inc.,* 501 U.S. 32, 43-45 (1991) (courts have inherent power to impose sanctions on a party); *In re Volpert,* 110 F.3d 494, 500-501 (7th Cir. 1997) (holding bankruptcy courts have authority under section 105 to sanction attorneys for vexatious conduct); *In re Mem'l Estates,* 950 F.2d 1364, 1370 (7th Cir. 1991) (holding bankruptcy court had jurisdiction to impose sanctions on attorney under Bankruptcy Rule 9011). "Bankruptcy is a creation of statute, and those who practice bankruptcy law must comply with its myriad statutory provisions and implementing rules." *Corbett,* 971 F.3d at 1304.

Thus, although Petitioners did not submit a claim against the estate, Pet. at 18, they voluntarily submitted themselves to the jurisdiction of, and supervision by, the bankruptcy court by entering an appearance as counsel for the debtor. As debtors' counsel, they filed the petition, bankruptcy schedules, and motions, and represented debtors at hearings. *See In re Burns,* Case No. 19-60349, docket (Bankr. S.D. Ill.). In so doing, they consented to adjudication of claims under section 526(c)(5) by the bankruptcy court without a jury. *Cf. Hallahan,* 936 F.2d at 1508 ("Once properly before a court of equity, a party subjects himself or herself 'to all the consequences

that attach to an appearance,' meaning here that the amount of Hallahan's liability was properly determined without a jury.") (quoting *Alexander v. Hillman*, 296 U.S. 222, 241 (1935)).

## II.     A Writ of Mandamus Is Not Necessary to Avoid Irreparable Harm Because Any Jury Right Can Be Fully Vindicated on Appeal Should the Petitioners Not Prevail on the Merits.

Petitioners also fail to meet the second requirement for mandamus because any jury right can later be fully vindicated on appeal.  *See Caldwell-Baker*, 392 F.2d at 889 ("If [the petitioner] is entitled to a jury trial but does not receive one, that claim can be vindicated on appeal from a final decision."); *Bank of Waukesha*, 796 F.2d at 1006 (holding that if the petitioner is "entitled to a jury trial," "[t]he decision on appeal [from the non-jury trial verdict] will vindicate that right").

Petitioners argue that an ordinary-course appeal is inadequate because they may need to defend fourteen trials in cases where they allegedly violated section 526, take fourteen appeals, and then re-try fourteen cases before a jury on remand.  Pet. at 10. The possibility that Petitioners may need to appeal adverse merits rulings does not transform the inability to obtain an extraordinary writ into an irreparable harm.  *See Caldwell-Baker*, 392 F.2d at 889 ("Many kinds of error may require retrials; the prospect that two trials will be necessary does not make the final-decision rule vanish.").  The ordinary appellate course that Petitioners complain of as overly burdensome would need to be followed for any error requiring a new trial, not just Petitioners' alleged jury right.  *See Bank of Waukesha*, 796 F.2d at 1006 ("The Bank may be exposed to the

travail of a second trial, but almost any dispute in the course of litigation has the potential to cause a second trial if the district court errs.").  If the Court granted writs of mandamus whenever there are multiple cases with similar allegations such writs would no longer be extraordinary relief.

Petitioners argue based on this Court's decision in *Matter of Rhone-Poulenc Rorer, Inc.*, 51 F.3d 1293 (7th Cir. 1995), that the alleged "significant pressure" to settle other cases if they lose one of the cases against them creates irreparable harm warranting mandamus.  Pet. at 10-11.  But that would be equally true if they lost a case after a jury trial in a district court.  Regardless, *Rhone-Poulenc* is inapposite.  That case addressed an interlocutory order certifying only particular issues in a mass tort case for class-action treatment.  *Rhone-Poulenc*, 51 F.3d at 1297.  A loss in the class-action trial would not be appealable because trial just on particular issues would not render a final judgment.  *Id.*  Nevertheless, a loss in such a trial could create a $25 billion liability risk that would pressure the petitioners to settle before there was ever an appealable judgment.  *Id.* at 1297-98.  There is no similar irreparable harm here because, unlike in *Rhone-Poulenc*, a loss at trial would be an appealable final judgment.

Petitioners also argue there is a risk of issue preclusion that will cause irreparable harm because their conduct is alleged to be part of a pattern and practice of violating section 526.  Pet. at 4, 11.  But the risk of issue preclusion that warrants mandamus is preclusion that would prevent appellate review of the denial of a jury trial.  *See Bank of Waukesha*, 796 F.2d at 1003-04 (explaining that judgment on an

equitable claim that precludes a jury trial on a legal claim and thus forecloses appellate review of whether a jury trial was required on the legal claim could support mandamus).  That is different from the preclusion that Petitioners allege exists here: that they would be in "the untenable position of having to decide whether to appeal a judgment simply out of fear that the [government] may raise collateral estoppel in the other proceedings."  Pet. at 11.  As this statement implicitly admits, an ordinary-course appeal would be available to remedy any error from denial of a jury trial.

Finally, Petitioners rely on *Matter of Balsimo*, 68 F.3d 185, 186-87 (7th Cir. 1995), to argue they are irreparably harmed by an erroneous denial of an Article III court, which they claim is required because of their supposed jury right.  Pet. at 11-12.  But *Balsimo* is distinguishable because the erroneous venue-transfer order at issue there would cause harm, such as parties and witnesses having to travel to an inconvenient forum, that could not be remedied on appeal.  *Balsimo*, 68 F.3d at 186-87.  By contrast, a remand for a retrial with a jury would remedy the alleged error here.

## III. The Circumstances of this Case Do Not Support this Court Exercising Its Discretion to Grant Mandamus.

The final factor is whether, in this Court's discretion, granting the writ is otherwise appropriate.  Mandamus is not appropriate here because, as in *Bank of Waukesha*, this case "presents all the vices of an interlocutory appeal."  796 F.2d at 1001.  Myriad circumstances could moot the jury issue rendering an appeal now unnecessary.  For example, the case could settle or the bankruptcy court could decline

to impose civil penalties.[3]  *See, e.g., Caldwell–Baker,* 392 F.3d at 888 ("Only at the end

will it be clear whether Caldwell–Baker has presented the sort of contention in which

withdrawal of the reference might make a difference."); *Bank of Waukesha*, 796 F.2d at

1001 (denying mandamus in part because if the plaintiff lost at trial "none of today's

disputes matters"); *accord Picard v. Saren-Lawrence*, Nos. 17-5157, 17-5162, 17-5163,

2018 WL 4659476, at *3 (S.D.N.Y. Sept. 11, 2018); *Panda Energy Int'l, Inc. v. Factory

Mut. Ins.*, Nos. 11-003, 10-2541, 2011 WL 610016, at *5 (N.D. Tex. Feb. 14, 2011);

*Tate v. Citimortgage, Inc. (In re Tate)*, No. 09-0039, 2010 WL 923630, at *4-5 (S.D. Ala.

Mar. 9, 2010); *Maxwell v. Kemp (In re Beale)*, 410 B.R. 613, 617 (N.D. Ill. 2009).  In

addition, the case comes to the Court without a complete record and, if Upright loses,

"the trial is sure to present still other issues that will bring the case" to this Court a

second time.  *Bank of Waukesha*, 796 F.2d at 1001.  "This risk of pointless piecemeal

proliferation of litigation, culminating in wasted time and effort by the parties and the

appealed-to court in adjudicating appeals for cases that have not been fully and finally

decided, is precisely why the interlocutory appeal mechanism is disfavored."  *Tate*,

2010 WL 923630, at *5.

---

[3] Upright has settled other actions against it.  *See, e.g., Corbett*, 971 F.3d at 1307-08
(discussing Upright settlement in two bankruptcy cases); *Casamatta v. Deighan Law,
LLC (In re Bilous)*, Adv. No. 20-6013, Dkt. No. 30 (Bankr. W.D. Mo. Feb. 11, 2021)
(motion to approve settlement with Upright) (attached as Exhibit B); *In re Dailey*, No.
15-61088-7, Dkt. No. 364 (Bankr. D. Mont. Mar. 9, 2021) (consent order reflecting
settlement with Upright), available at https://www.justice.gov/opa/press-
release/file/1375236/download.

Petitioners' only argument for the exercise of this Court's discretion, beyond merely repeating the arguments addressed above, is that the bankruptcy judge allegedly is biased because she "directed" the United States Trustee to investigate Upright's cases. Pet. at 20-21. But that judge was far from the only judge to take issue with UpRight's conduct. *See supra* at 9-10 (citing cases). Regardless, there can be no negative inference from the court's alleged direction to the United States Trustee to investigate given that section 526(c)(5) expressly authorizes the bankruptcy court to impose civil penalties "on its own motion" if it makes the requisite findings. 11 U.S.C. § 526(c)(5). If Petitioners thought they could establish bias, they would have sought recusal. A bias allegation that the judge has not had a chance to address is not a compelling reason to grant mandamus.

## CONCLUSION

For these reasons, the Court should deny the Petition for a Writ of Mandamus.

July 19, 2022

Respectfully submitted,

NANCY J. GARGULA
United States Trustee for Region 10

By /s/ *Beth A. Levene*
    Beth A. Levene
    Trial Attorney

RAMONA D. ELLIOTT
Deputy Director and General Counsel
P. MATTHEW SUTKO
Associate General Counsel
BETH A. LEVENE
Trial Attorney

Department of Justice
Executive Office for
  United States Trustees
441 G Street, NW,
Suite 6150
Washington, DC 20530
Tel: (202) 307-1399
E-mail: beth.a.levene@usdoj.gov

NANCY J. GARGULA
United States Trustee for Region 10
JAMIE F. WILEY
Assistant United States Trustee
ELLEN L. TRIEBOLD
MARK D. SKAGGS
Trial Attorneys

Department of Justice
Office of the United States Trustee
401 Main St., Suite 1100
Peoria, IL 61602
Tel: (309) 671-7854, ext. 226
Email: mark.d.skaggs@usdoj.gov

## **CERTIFICATE OF COMPLIANCE**

I certify that the foregoing document complies with the type-volume limitations set forth in Federal Rule of Appellate Procedure 21(d) because, excluding the parts of the document exempted by Fed. R. App. P. 32(f) it contains 7,682 words as counted by Microsoft Word.  This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Garamond font.

/s/ Beth A. Levene

Beth A. Levene
Trial Attorney

EXHIBIT A

Case 3:21-cv-Case621P3005lkumeDoc 3Filed Wated/05/14Page 42ef 227 3 Page ID #426
Case: 22-2083    Document: 8    Filed: 06/19/2022    Pages: 62
June 04, 2015
EDWARD J. EMMONS, CLERK
U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF CALIFORNIA

1

2

3

4

5

6

7            UNITED STATES BANKRUPTCY COURT

8            NORTHERN DISTRICT OF CALIFORNIA

9    In re

10   JENNY GILLESPIE,                              No. 12-13030

11                    Debtor(s).
     _____/

12
     TRACY HOPE DAVIS, United States Trustee,
13

14                    Plaintiff(s),

15              v.                                 A.P. No. 14-1098

16
      SHLC HOLDINGS, LLC, et al.,
17

18                    Defendant(s).
     _____/

19
                 Memorandum on Motion to Strike Jury Demand
20                         _____

21        In this adversary proceeding, the U.S. Trustee alleges that various defendants have violated the

22   provisions of § 110 and § 526 of the Bankruptcy Code governing the conduct of bankruptcy petition

23   preparers and debt relief agencies. These statutes provide for actual damages, disgorgement of fees,

24   fines and injunctive relief if there has been a violation, all of which the U.S. Trustee seeks. One of the

25   defendants, Ann Marie Meingast, has demanded a jury trial. The U.S. Trustee has moved the court to

26   strike the demand.

                                                  1

1    A litigant facing liability under a federal statute is entitled to a jury only if the nature of the

2    statute is analogous to a common-law action, the relief sought is legal and not equitable in nature, and

3    the statute creates a private right. *Granfinanciera, S.A. v. Nordberg,* 492 U.S. 33, 109 S.Ct. 2782, 106

4    L.Ed.2d 26 (1989). If a case arises between the government and persons subject to its authority and

5    Congress has assigned its adjudication to a specialized court of equity, there is no right to a jury trial.

6    *Id. at 42n.4, 51n.8.* Thus, there is no right to a jury trial where disgorgement of bankruptcy fees is

7    sought, *Hale v. U.S. Trustee,* 509 F.3d 1139, 1146 (9th Cir. 2007), or where a plaintiff seeks statutory

8    damages for violation of a bankruptcy statute, *In re Renewable Energy Dev. Corp.,* 500 B.R. 77, 90

9    (D.Utah 2013); *In re Calderon,* 497 B.R. 558 (Bkrtcy.E.D.Ark. 2013), or where injunctive relief is

10   sought against a bankruptcy petition preparer, *In re Graves,* 279 B.R. 266, 271-72 (9th Cir. BAP 2002).

11   There is also no right to a jury for determination of a civil fine. *Tull v. United States*, 481 U.S. 412,

12   427, 107 S.Ct. 1831, 95 L.Ed.2d 365 (1987).[1]

13   For the foregoing reasons, the motion to strike the jury demand will be granted. Counsel for

14   the U.S. Trustee shall submit an appropriate form of order.

15

16   Dated: June 3, 2015

17

18

19   Alan Jaroslovsky
     U.S. Bankruptcy Judge

20

21

22   _____

23   [1]The fines against petition preparers provided in § 110 of the Bankruptcy Code are civil in nature. *In re Sustaita,* 438 B.R. 198, 213 (9th Cir. BAP 2010). Section 526(c)(5)(B) specifically

24   authorizes the court, either on its own motion or the motion of the U.S. Trustee, to impose "an appropriate civil penalty"for violation of the debt relief agency provisions of the Code.

25   Meingast cites *Tull* as supporting her jury demand, but it does not. *Tull* holds that even when there is a right to a jury trial as to liability, the amount of civil penalties is assessed by the court. As

26   noted above, Meingast has no right to a jury as to liability.

EXHIBIT B

# UNITED STATES BANKRUPTCY COURT
## WESTERN DISTRICT OF MISSOURI

In re:                                           )
                                                 )
ANTHONY (NMN) BILOUS,                            )          Case No. 20-60293-CAN7
                                                 )          Chapter 7
                Debtor.                     )
-------------------------------------------------------------------------------------------------------
DANIEL J. CASAMATTA,                             )
ACTING UNITED STATES TRUSTEE,                    )
                                                 )
                Plaintiff.                  )
                                                 )
v.                                               )          Adv. No. 20-6013-CAN
                                                 )
DEIGHAN LAW, LLC                                 )
f/k/a LAW SOLUTIONS CHICAGO LLC,                 )
d/b/a UPRIGHT LAW LLC,                           )
                                                 )
and                                              )
                                                 )
MEAGAN HOWE,                                     )
                                                 )
                Defendants.                 )
-------------------------------------------------------------------------------------------------------
AND
-------------------------------------------------------------------------------------------------------
In re:                                           )
                                                 )          Case No. 20-60285-CAN7
ELLEN RENEE BAUM,                               )          Chapter 7
                                                 )
                Debtor.                     )
-------------------------------------------------------------------------------------------------------
AND
-------------------------------------------------------------------------------------------------------
In re:                                           )
                                                 )
MAJORIE DARLENE BRADSHAW,                        )          Case No. 20-60334-CAN7
                                                 )          Chapter 7
                Debtor.                     )
-------------------------------------------------------------------------------------------------------
AND
-------------------------------------------------------------------------------------------------------
In re:                                           )

1

|  | ) |  |
| --- | --- | --- |
| **ELDEN L. MITCHELL, SR.,** | ) | **Case No. 20-30070-BTF7** |
| **TAMARA L. MITCHELL,** | ) | **Chapter 7** |
|  | ) |  |
| **Debtors.** | ) |  |

## AGREED MOTION TO RESOLVE THE UNITED STATES TRUSTEE'S EXISTING AND POTENTIAL CLAIMS RELATING TO THE REFUND OF FEES, ENJOIN ALLEGED VIOLATIONS OF 11 U.S.C. § 526, IMPOSING CIVIL PENALTIES AND GRANTING RELATED RELIEF

Daniel J. Casamatta, the Acting United States Trustee for Region 13 ("UST"), and

Deighan Law LLC, formerly known as Law Solutions Chicago LLC d/b/a UpRight Law LLC

(including its successors, assigns, and any entities operating under its ownership, control, or

direction, hereinafter "UpRight Law"), move this court to enter an agreed order resolving the

UST's Adversary Complaint in *In re Bilious*, Case No. 20-60293 styled *Casamatta v. Deighan

Law, LLC and Meagan Howe,* Adv. Case No. 20-6013 and potential claims that may exist in *In

re Baum*, Case No. 20-60285; *In re Bradshaw*, Case No. 20-60334 and *In re Mitchell*, Case No.

20-30070 (together the "Settled Cases").  In support of this motion the parties state as follows:

### Jurisdiction

1.  This Court has subject matter jurisdiction over the Settled Cases pursuant to 28 U.S.C.

    § 1334.  Venue in the United States Bankruptcy Court for the District of Western District

    of Missouri is proper pursuant to 28 U.S.C. §§ 1408 and 1409.  The parties' consent to

    the entry of a final order approving the motion and resolving the claims set forth herein in

    each of the Settled Cases.

### Stipulations and Representations

2.  The parties have entered into this settlement prior to any formal discovery requests being

    issued related to the Settled Cases.  As a result, with respect to the preparation of this

    settlement motion, the UST has relied upon certain representations provided by UpRight

2

Law.  Based on those caveats, the parties represent that to the best of their knowledge, information, and belief, the facts provided below are true and correct.

A.    *UpRight Law's Operations as Relevant to the Settled Cases*

3.    UpRight Law is an Illinois limited liability company that conducts business in Missouri as UpRight Law LLC.  Under its former name as Law Solutions Chicago, LLC, it filed articles of organization with the Illinois Secretary of State on October 10, 2008.  The principal office address of UpRight Law is 79 W. Monroe St., Tenth Floor, Chicago, IL 60603 Suite 1006. UpRight Law previously operated under various other assumed names, including Jason Allen Law, LLC, Allen Chern Law, and Chern Law LLC, among others.

4.    On January 6, 2016, Terry Garner, an attorney then licensed to practice in the State of Missouri and authorized to file bankruptcy cases in the United States Bankruptcy Court for the Western District of Missouri, signed a partnership agreement with UpRight Law.

5.    On October 30, 2019, Meagan Howe, an attorney licensed to practice in the State of Missouri and authorized to file bankruptcy cases in the United States Bankruptcy Court for the Western District of Missouri, signed a partnership agreement with UpRight Law.

6.    UpRight Law is a debt relief agency as defined in 11 U.S.C. § 101(12A) and provided bankruptcy assistance, as defined by 11 U.S.C. § 101(4A), to the each of the debtors in the Settled Cases.  The debtors in each of the Settled Cases were assisted persons as defined in 11 U.S.C. § 101(3).

7.    In each of the Settled Cases, the debtors agreed to a payment plan under which they would pay UpRight Law's attorney fees, and the filing fee, over a period of months by automatic debit.

8.  When each of the debtors in the Settled Cases became clients of UpRight Law, their case
    was assigned to local partner Terry Garner.

9.  Terry Garner was suspended from the practice of law in the State of Missouri by the
    Missouri Supreme Court on October 29, 2019.  Subsequently, Mr. Garner was suspended
    from the practice of law in the United States District Court for the Western District of
    Missouri, which suspension included practice before the United States Bankruptcy Court
    for the Western District of Missouri.

10. Subsequently, UpRight Law assigned the Settled Cases to Meagan Howe.  At the time of
    Mr. Garner's suspension, Ms. Howe was not affiliated with or a partner of UpRight Law.

**The Bilous Case**

11. On August 25, 2018, Anthony Bilous retained UpRight Law for representation in a
    consumer bankruptcy case.

12. Between August 25, 2018, and February 5, 2019, Mr. Bilous made installments payments
    to UpRight Law for attorney's fees totaling $1,400 in connection with the filing of a
    Chapter 7 bankruptcy case.

13. Mr. Bilous obtained his pre-petition credit counseling, as required by Section 109(h) of
    Title 11 of the United States Code (the "Bankruptcy Code") on September 24, 2019.  Mr.
    Bilous's credit counseling was obtained through MoneySharp Credit Counseling, Inc.

14. Section 109(h) of the Bankruptcy Code requires, with several exceptions not applicable
    here, debtors to obtain a pre-petition credit counseling certificate within 180 days prior to
    the filing of their bankruptcy case.

15. Mr. Bilous's bankruptcy case was not filed before Mr. Garner was suspended from the practice of law in this Court.

16. The petition and schedules filed with Mr. Bilous's case indicate they were executed on March 10, 2020, which was two weeks prior to the case being filed.  It was not until March 24, 2020, that Ms. Howe, in her capacity as a partner of UpRight Law, filed Mr. Bilous' voluntary petition under Chapter 7 of the Bankruptcy Code on behalf of Anthony Bilous.  Ms. Howe executed the petition as counsel of record for Mr. Bilous and filed the case using the Court's CM/ECF system with her unique user identification and password.

17. With respect to Part 5, Question 15 of the Petition, Ms. Howe checked the box for the debtor declaring that credit counseling had been received within 180 days prior to filing, but that the certificate of completion was not attached to the filing.  Mr. Bilous signed the petition under oath.  Ms. Howe declared in the petition that she had conducted a reasonable investigation of the facts of the petition.

18. Within the first week after the filing, the United States Bankruptcy Court for the Western District of Missouri issued three Orders to Show Cause ("OSC") directed to Mr. Bilous and two OSCs directed to Ms. Howe.

19. The first OSC directed to the Mr. Bilous required him to produce the credit counseling certificate of completion referenced in the petition by April 8, 2020, or to show cause why the case should not be dismissed.

20. The second OSC directed to Mr. Bilous required him to show cause why the case should not be dismissed for failing to provide his middle name or initial, or to designate that no such middle name or initial existed by using the required designation NMN.  The second

OSC also required Mr. Bilous to show cause why the case should not be dismissed for failing to file evidence of income within the sixty-day period prior to filing.  The second OSC also contained a response deadline of April 8, 2020.

21. The third OSC directed to Mr. Bilous required him, by April 1, 2020, to show cause why the case should not be dismissed for failure to timely file the Declaration regarding Electronic Filing, which is a required declaration demonstrating that the debtor has consented to the filing of the case electronically and that counsel is in possession of any required original signatures.

22. The first OSC directed to Ms. Howe to either certify that the Rights and Responsibilities Agreement had been entered into in order to obtain a "no look" fee under W.D. Mo. Bankr. L.R. 2016-1 or to file an application approving her fee agreement as required by the rule.  The second OSC directed to Ms. Howe required her to show cause in writing why her disclosure of compensation filed under Fed. R. Bankr. P. 2016(b) was inconsistent with W.D. Mo. Bankr. L.R. 2016-1 for the Western District of Missouri. The Court required a response to the OSC by April 16, 2020 and set a hearing for April 28, 2020.

23. On April 8, 2020, Ms. Howe filed the credit counseling certificate for Mr. Bilous evidencing that he had obtained his credit counseling on September 24, 2019, which was 182 days prior to the filing of the bankruptcy case.

24. At the time of the filing of the case, UpRight Law and Ms. Howe knew, or should have known that the credit counseling certificate had expired.

25. As a result of the expired credit counseling certificate, the United States Bankruptcy

    Court for the Western District of Missouri issued an additional OSC on April 13, 2020,

    requiring Mr. Bilous and Ms. Howe to show cause why the case should not be dismissed

    for failing to comply with Section 109(h) and why Ms. Howe's fees should not be

    ordered disgorged.  A response was required by April 20, 2020.

26. On April 20, 2020, the UST commenced adversary proceeding case number 20-06013

    (the "Bilous Adversary Proceeding") against UpRight Law and Ms. Howe in the Bilous

    bankruptcy case seeking: 1) redress for violations of Section 526(a)(2) of Title 11; 2)

    redress for violations of Section 526(a)(3) of Title 11; 3) disgorgement or return of fees

    pursuant to Section 329(b) and 4) sanctions under Section 707(b)(4) and Fed. R. Bankr.

    P. 9011.

27. Subsequently, on April 24, 2020, Ms. Howe, in her capacity as a partner of UpRight Law,

    filed a motion to voluntarily dismiss Mr. Bilous's bankruptcy case.  UpRight Law also

    refunded the attorney fee and the filing fee to Mr. Bilous.

28.  On May 27, 2020, the Bankruptcy Court granted the Motion to voluntarily dismiss the

    Bankruptcy, but retained jurisdiction over the Bilous Adversary Proceeding and over any

    issues relating to the conduct of Ms. Howe and UpRight Law.   On June 4, 2020, the

    Defendants moved to dismiss the Adversary Complaint.

29. For the purposes of settlement, and to avoid the substantial costs of litigation, UpRight

    Law does not contest that certain information contained in Mr. Bilous' petition,

    schedules, and statements constitute false statements under 11 U.S.C.§ 526(a)(2).

**The Baum Cases**

Case: 22-2083      Document: 8      Filed: 07/19/2022      Pages: 62

30. On July 7, 2018, Ellen Rene Baum retained UpRight Law for representation in a consumer bankruptcy case.

31. Between July 7, 2018, and September 6, 2019, Ms. Baum made installments payments to UpRight Law for attorney's fees and filing fees totaling $1,635 in connection with the filing of a Chapter 7 bankruptcy case.

32. Ms. Baum's bankruptcy case was not filed before Mr. Garner was suspended from the practice of law in this Court.

33. On February 21, 2020, Ms. Howe, in her capacity as a partner of UpRight Law, filed Ms. Baum's initial Chapter 7 bankruptcy case, which was docketed in the United States Bankruptcy Court for the Western District of Missouri as case number 20-60168.  Ms. Howe signed the petition as counsel to Ms. Baum and filed the case in the Court's CM/ECF system using her unique user identification and password.

34. On February 24, 2020, the Court issued two OSCs and a related Clerk's Note.  The Clerk's Note required the Certificate of Credit Counseling to be filed by 5:00 pm on February 24, 2020 on pain of dismissal.  The first OSC required Ms. Howe to file the declaration regarding electronic filing by March 2, 2020.  The second OSC required Ms. Howe to file, by March 9, 2020, on behalf of Ms. Baum, certain documents related to Ms. Baum's income required by the Bankruptcy Code and the local rules of the Bankruptcy Court.

35. Ms. Howe satisfied the Clerk's Note by filing the certificate of credit counseling on February 24, 2020.

Case: 22-2083      Document: 8      Filed: 07/19/2022      Pages: 62

36. However, Ms. Howe failed to respond to, or satisfy the Court's OSCs.  Accordingly, the
    Court dismissed case number 20-60168.

37. Rather than filing a motion to vacate the dismissal and to reinstate the case, Ms. Howe, in
    her capacity as a partner of UpRight Law, filed a new Chapter 7 case for Ms. Baum on
    March 23, 2020, which was docketed in the Bankruptcy Court as case number 20-60285.

38. Ms. Howe, acting in her capacity as a partner of UpRight Law, did not have Ms. Baum
    execute a new petition and schedules.  Rather, Ms. Howe filed case number 20-60285
    with the same signature certifications for Ms. Baum that were used on the petition and
    schedules used in case number 20-60168.  Those documents, which had been executed on
    February 20, 2020, were over a month old.

39. Despite not having Ms. Baum execute new certifications, Ms. Howe, acting in her
    capacity as a partner of UpRight Law, made changes to the substance of the schedules,
    including information contained on Schedules D and F which were not verified under
    oath by Ms. Baum as required by the Bankruptcy Rules.

40. The petition signed and filed by Ms. Howe in her capacity as a partner of UpRight Law,
    and on behalf of Ms. Baum in case number 20-60168, was materially inaccurate in the
    fact that it failed to disclose the filing of, and subsequent dismissal of, case number 20-
    60168 in response to question number nine on the petition.  Further, at the meeting of
    creditors held in case number 20-60285, Ms. Howe failed to disclose the filing of case
    number 20-60168 to the chapter 7 trustee when he inquired about prior case filings.

41. As a result of the failure of UpRight Law and Ms. Howe to reinstate case number 20-
    60168 and by filing case number 20-60285 within one year of the dismissal, Ms. Baum

Case: 22-2083      Document: 3      Filed: 07/19/2022      Pages: 62

became subject to the provisions of Section 362(c)(3) of the Bankruptcy Code, which

terminated the automatic stay thirty days after the filing of case number 20-60285.

42. During the pendency of case number 20-60285, the Debtor and Ms. Howe failed to

timely provide documents to the chapter 7 trustee, resulting in the trustee seeking to delay

Ms. Baum's discharge.  As a result, the entry of Ms. Baum's Chapter 7 discharge was

delayed by approximately three weeks.

43. For the purposes of settlement, and to avoid the substantial costs of litigation, UpRight

Law does not contest that certain information contained in the petition, schedules, and

statements filed in Ms. Baum's cases constitute false statements under 11 U.S.C.§

526(a)(2).

## The Bradshaw Case

44. On August 31, 2018, Marjorie Darlene Bradshaw retained UpRight Law for

representation in a consumer bankruptcy case.

45. Between August 31, 2018, and February 1, 2019, Ms. Bradshaw made installments

payments to UpRight Law for attorney's fees and filing fees totaling $1,735 in

connection with the filing of a Chapter 7 bankruptcy case.

46. Ms. Bradshaw's bankruptcy case was initially assigned by UpRight Law to Mr. Garner.

However, it was not filed before Mr. Garner was suspended from the practice of law in

this Court.

47. On April 1, 2020, Ms. Howe, in her capacity as a partner of UpRight Law, filed a Chapter

7 bankruptcy case on behalf of Ms. Bradshaw, which was docketed in the United States

Case: 22-2083      Document: 8      Filed: 07/19/2022      Pages: 62

Bankruptcy Court for the Western District of Missouri as case number 20-60334.  Ms. Howe signed the petition as counsel to Ms. Bradshaw and filed the case in the Court's CM/ECF system using her unique user identification and password.

48. Despite the fourteen-month period between the time Ms. Bradshaw paid in full and the filing of her case, the chapter 7 trustee requested that the schedules be amended to include additional information, including the existence of a previously undisclosed secured creditor with a lien on Ms. Bradshaw's personal property.

49. For the purposes of settlement, and to avoid the substantial costs of litigation, UpRight Law does not contest that certain information contained in the Ms. Bradshaw's petition, schedules, and statements constitute false statements under 11 U.S.C.§ 526(a)(2).

### The Mitchell Cases

50. On May 11, 2017, Elden L. Mitchell, Sr. and Tamara L. Mitchell (together the "Mitchells") retained UpRight Law for representation in a consumer bankruptcy case.

51. Between May 11, 2017, and May 30, 2019, the Mitchells made installments payments to UpRight Law for attorney's fees and filing fees totaling $1,835 in connection with the filing of a Chapter 7 bankruptcy case.

52. The Mitchells bankruptcy case was assigned by UpRight Law to Mr. Garner.  However, the Mitchells' bankruptcy case was not filed before Mr. Garner was suspended from the practice of law in this Court.

53. On January 22, 2020, Ms. Howe, in her capacity as a partner of UpRight Law, filed the Mitchells' initial Chapter 7 bankruptcy case, which was docketed in the United States

Case: 22-2083      Document: 8      Filed: 07/29/2022      Pages: 62

Bankruptcy Court for the Western District of Missouri as case number 20-30028.  Ms.
Howe signed the petition as counsel to the Mitchells and filed the case in the Court's
CM/ECF system using her unique user identification and password.

54. However, Ms. Howe failed to pay the filing fee for case number 20-30028.  Accordingly,
    on February 4, 2020, the Court issued an OSC to Ms. Howe to show cause why the case
    should not be dismissed for failing to pay the filing fee.  Ms. Howe was directed to pay
    the filing fee by February 6, 2020, or the case would be dismissed.

55. Ms. Howe did not pay the filing fee by February 6, 2020, and accordingly, the Court
    dismissed case number 20-30028 on February 10, 2020.

56. Ms. Howe paid the filing fee of February 17, 2020.  However, she did not move to vacate
    the dismissal and reinstate case number 20-30028.

57. On February 21, 2020, Ms. Howe, in her capacity as a partner of UpRight Law, filed a
    second bankruptcy case for the Mitchells that was docketed by the Bankruptcy Court as
    case number 20-30070.

58. Neither UpRight Law nor Ms. Howe had the Mitchells execute a new petition and
    schedules.  Rather, Ms. Howe filed case number 20-30070 with the identical petition and
    scheduled used in case number 20-30028.  However, despite not having the Mitchells
    execute a new petition and new schedules, Ms. Howe filed case number 20-30070 with
    electronic signature verifications for the Mitchells on the petition and schedules bearing
    the date February 21, 2020.

59. The petition signed and filed by Ms. Howe in her capacity as a partner of UpRight Law
    on behalf of the Mitchells in case number 20-30070 was materially inaccurate in the fact
    that it failed to disclose the filing of, and subsequent dismissal of, case number 20-30028
    in response to question number nine on the petition.

60. Despite the lengthy time between when UpRight Law was paid in full and the filing of
    the bankruptcy cases, the schedules and statements used in both cases contained errors
    concerning the reporting of the Mitchells' income that was discovered at the meeting of
    creditors held on May 14, 2020.  Accordingly, Ms. Howe was directed by the trustee to
    prepare and filed amended schedules and an amended Form 122A-1, which were filed on
    June 16, 2020.

61. Further, UpRight Law and Ms. Howe failed to timely file proof of the Mitchells'
    completion of the mandatory post-petition financial management course.  The Mitchells'
    completed the course on February 28, 2020, but Ms. Howe filed the certification on June
    30, 2020.

62. The need for amended schedules and the delay in filing the post-petition financial
    management course certifications contributed to a four-week delay in the entry of the
    Mitchells' Chapter 7 discharge.

63. As a result of the failure of UpRight Law and Ms. Howe to reinstate case number 20-
    30028 and by filing case number 20-30079 within one year of the dismissal, the Mitchells
    became subject to the provisions of Section 362(c)(3) of the Bankruptcy Code, which
    terminated the automatic stay thirty days after the filing of case number 20-30070.

64. For the purposes of settlement, and to avoid the substantial costs of litigation, UpRight Law does not contest that certain information contained in the petition, schedules, and statements filed in the Mitchells bankruptcy cases constitute false statements under 11 U.S.C.§ 526(a)(2)."

## Relief and Release of Claims

65.  To resolve the dispute between the UST and UpRight Law, the parties agree to the following terms:

    a**.** **Effective Date**. The "Effective Date" as used below, is the day after the entry of an order approving this motion by the United States Bankruptcy Court for the Western District of Missouri.  If separate orders are entered in each of the Settled Cases on different dates, the day after the last such date of the entry of an order approving this motion shall be the "Effective Date".  Further, this agreement shall not be effective until orders approving this motion are entered in each of the Settled Cases.  Should the Bankruptcy Court decline to approve the motion in one or more of the Settled Cases, this agreement and any orders approving it shall not be effective or binding on the parties and the parties remain free to litigate their claims in all of the Settled Cases as if this motion had not been filed.

    b.  **Monetary Relief**

        i. <u>Return of Fees:</u>  UpRight Law represents and warrants that it has disgorged all attorneys' fees in the Bilous case prior to the filing of this motion.  With respect to the Baum, Bradshaw, and Mitchell cases, UpRight Law shall return all attorneys' fees received in each of these Settled Cases within fourteen days

after the Effective Date to its respective clients.  Within seven days thereafter,

UpRight Law shall provide a declaration under penalty of perjury by a

corporate officer or representative certifying, to counsel for the UST, the

amount and date such fees have been returned to the clients in compliance

with this agreement and the order approving it.

ii.  <u>Civil Penalty:</u>  For the purposes of settlement, and to avoid the substantial

costs of litigation, UpRight Law does not contest that information contained in

the petition, schedules, and statements in the Settled Cases constitutes false

statements under 11 U.S.C. 526(a)(2), and the aggregate of those statements

constitutes a pattern under 11 U.S.C. 526(c)(5), and accordingly, the parties

agree and stipulate that UpRight Law shall pay a civil penalty of $6,000 to the

United States Treasury.  The Clerk of the Court of the United States District

Court for the Western District of Missouri is authorized to receive a total of

$6,000 as a civil penalty in this case which shall be remitted to the Clerk

within forty (40) days after the Effective Date.

**c.  Release and Miscellaneous Provisions**

(i)  By operation of any order(s) approving this motion, all claims, causes of

action, and requests for relief that were brought or could have been brought

against UpRight Law or Ms. Howe in the Settled Cases related to their

representation of the debtors or the filing of cases, as of the date of the filing

of the order approving this Motion, by the UST will be fully and finally

resolved and released. However, such resolution shall not:

(A) be an admission by the UST that UpRight Law, as currently structured, constitutes a "partnership" or "professional association" for purposes of 11 U.S.C. § 504, or that it is properly organized, maintained, and/or structured as a "law firm," or be an admission by UpRight Law or Ms. Howe that they are not properly affiliated or that Ms. Howe would separately be considered a debt relief agency;

(B) otherwise bar or preclude any party to the Order from contesting in any jurisdiction any present or future conduct or business practices of UpRight Law, or any of its current or future partners, members, independent contractors, attorneys, employees, officers, agents, subsidiaries, insurers, or other representatives;

(C) otherwise bar or preclude the United States Trustee for Region 13 from referring any of the conduct or facts of the Settled Cases to any court, agency or agent thereof, state or federal, charged with supervising the conduct of lawyers involved in these matters; and

(D) otherwise bar or preclude the United States Trustee for Region 13 from referring any of the conduct or facts of the Settled Cases to any United States Attorney.

(ii) The United States Bankruptcy Court for the Western District of Missouri shall retain exclusive jurisdiction (subject to the right of any party to appeal) over the Order, including disputes arising under, and the construction, interpretation, modification, and enforcement of the Order.

(iii)  UpRight Law consents and agrees to fully and finally release the UST and

all current, and former, employees of the United States Trustee Program from

any and all claims that could have been asserted in the Settled Cases as of the

Effective Date under the Equal Access to Justice Act, 28 U.S.C. § 2412, based

on the UST's investigation and prosecution of claims related to the facts and

circumstances set forth in this Motion and the Order.

(iv)  The Order will not bind or prejudice the rights and claims of non-parties.

66. The foregoing constitutes the entire agreement of the parties related to the Settled Cases.

WHEREFORE, the parties request that the Court enter such orders as necessary to approve this

motion.

Dated this 11th day of February, 2020.

Respectfully Submitted,

DANIEL J. CASAMATTA
Acting United States Trustee

BY:  /s/ Adam E. Miller
Adam E. Miller, MO Bar #65429
Trial Attorney
Office of the United States Trustee
Charles Evans Whittaker Courthouse
400 East 9th Street, Room 3440
Kansas City, MO  64106
(816) 512-1940
(816) 512-1967 Telecopier
adam.e.miller@usdoj.gov

DEIGHAN LAW LLC and MEAGAN HOWE

BY:   */s/ Craig Sonnenschein*
Craig Sonnenschein, IL Bar #6273084
79 West Monroe Street
Chicago, Illinois 60603
(312) 953-5270 (t.)
csonnenschein@uprightlaw.com (e.)
*Admitted Pro Hac Vice* in Adv. No. 20-6013-CAN

*Attorney for Deighan Law LLC, doing business as UpRight Law LLC, and* Meagan Howe in Adv. No. 20-6013

BY:   */s/ Meagan Howe*
Meagan Howe,
Partner, UpRight Law LLC
MO Bar #63774
P.O. Box 834 Lebanon MO, 65536
(417) 595-7071 (t.)
mhowe@uprightlaw.com (e.)

Counsel of record in Case Nos. 20-60293-CAN7; 20-60285-CAN7; 20-60334-CAN7; and 20-30070-BTF

## CERTIFICATE OF SERVICE

I, Adam E. Miller, as counsel to the United States Trustee, certify that on this 11th day of February, 2021, that I have served the above motion in each of the foregoing cases by CM/ECF or electronic means on counsel for the Debtor, the case Trustee, and by mail on any parties requesting service of matters in these cases.

/s Adam E. Miller

## CERTIFICATE OF SERVICE

I hereby certify that on July 19, 2022, I electronically filed the foregoing

**OPPOSITION TO PETITION FOR WRIT OF MANDAMUS BY NANCY J.**

**GARGULA, UNITED STATES TRUSTEE** with the Clerk of the Court for the

United States Court of Appeals for the Seventh Circuit by using the CM/ECF system.

Participants in the case who are registered CM/ECF users will be served by the

CM/ECF system.

*/s/ Beth A. Levene*
Beth A. Levene
Trial Attorney